Case number 19-5343. Andrew H. Farrar for the balance versus Steve Jurcyzk in his official capacity as the acting administrator of the National Aeronautics and Space Administration. Ms. Robinette Amikuskuri for the balance. Mr. Farrar for the balance. Ms. Palmer Ball for the appellee. Good morning, counsel. Ms. Robinette, please proceed when you're ready. Good morning, your honors, and may it please the court. My name is Catherine Robinette Amikus for appellant Mr. Farrar. The narrow issue before this court is whether a plaintiff seeking a de novo trial in this court must return his administrative award before being permitted to initiate his civil action. Because neither the Rehabilitation Act, the incorporated provisions of Title VII, nor case law from this court impose such a requirement, the district court erred in this case. There's no dispute in this case that Mr. Farrar seeks de novo review and that therefore he must prove both liability and entitlement to his requested relief. The government acknowledged that both in its motion to dismiss below and in its briefings here. Because Mr. Farrar seeks de novo review, Scott does not govern. There was no ambiguity in Scott that the plaintiff explicitly argued that he was not required to re-litigate liability in the district court. That is not the case here. And there's no authority for the proposition that simply maintaining the status quo during the pendency of litigation by retaining an administrative award imposes a substantive liability to civil action. The only other federal appellate court to address this issue, the Fifth Circuit in Massengill, held that the retention of an administrative award was not a bar to initiating a civil action in district court. Ms. Robinette, the Fifth Circuit said that if the plaintiff in that case loses his federal court suit, then that plaintiff likely would have to give back the award that was received during the administrative adjudication. Do you agree that Mr. Farrar will have to give back his entire award that he has received if he loses his civil suit to the district court? Yes, Judge Walker. We're not arguing that Mr. Farrar would not be required to return his administrative award if he ultimately was unsuccessful in the district court in this case. We're simply arguing that failing to disgorge the award now before initiating civil action imposed a substantive bar to him initiating his proceeding here. So, our ask is fairly narrow that Mr. Farrar not be required to disgorge the award prematurely or before initiating civil action. But we do not argue that he, if ultimately unsuccessful, would have to return his administrative award. How much was it? My impression is that there was $25,000 plus $8,000. Is that ballpark correct? Ballpark, that's correct. I believe there were attorney's fees as well. I don't know if that concluded in that amount, but that's how it sounds. And if you could expand a little bit on your theory for why the government is not already entitled to that money and why the government didn't become entitled to that money the moment that he filed this civil suit, which could be viewed as a rejection of the EEOC adjudication. I'm not saying that he would necessarily have to write them a check, but if the government were to bring their own suit to recoup that money today, tell me why the government shouldn't win that suit immediately. I guess I would say, you know, it's not, I think the government, in this or any other case where this is a, where this happens, has tools at its disposal to work out with the parties some sort of arrangement to place the monies in escrow during the pendency of the litigation. I don't think anything prohibits the government from seeking to do something like that. As I said, you know, we're just arguing that the mere acceptance didn't bar his action. Assume I agree with you on that, but I think that he lost any entitlement to the money as soon as he filed this suit. Maybe you agree with me that the government can file their own suit or a counterclaim to his suit and is entitled to get that money back immediately because he rejected that money by filing this suit. Yeah, I mean, I'll, candidly, I haven't thought through the entitlement, you know, to the funds issue at the present moment thoroughly enough, I think, to say. Yeah. Didn't Massengill itself contemplate a counterclaim? I believe the court there did, yes. So then if there's an opportunity to file, if your argument is that we should adopt the approach in Massengill, and Massengill, as I recall, correct me if I'm wrong, but as I recall, the opinion closes by contemplating that the government could file a counterclaim. Then there'd be a question about how ripe the counterclaim would be and exactly when the entitlement to prevail on the counterclaim and get the money back kicks in. But at that point in time, the government would have asserted its entitlement to get the money back. And then there'd be a temporal question about when the court actually renders the award of the counterclaim and does it have to wait till the end of the suit for the claim itself and the counterclaim. I haven't purported to work any of that out in my mind, but I take it that the counterclaim is there as an opportunity for the government. That's right. And Massengill certainly contemplated the possibility of a counterclaim and didn't opine as to the timing question that you raised, which I agree is a tricky one. Can I follow up on one aspect of what Judge Walker is asking you about, which is so a counterclaim is one possibility that Massengill itself contemplated. And you could also contemplate a scenario in which the government would adopt some sort of regulatory apparatus, regulations or something that would provide for a requirement for a party who brings a suit to put, as you said, put money in escrow, or I don't know exactly how they would work it out. In theory, the government could adopt a regulatory regime that addressed some of the issues that are in play here. And I just didn't know whether you'd given any thought to, I know that you're arguing your capacity as court appointed amicus, but have you given thought to whether that kind of regulatory apparatus would be something that's within the government's authority to do? I think it would. And I think the regulations that the court's aware of and directed us to adopt 502, that regulation provides that agencies have 120 days after receipt of the final EEOC decision to provide the relief ordered. That rule was amended in 2012. Previously, the time allotted to agencies to provide relief was 60 days. So in 2012, the commission extended the and they specifically noted in the preamble that that change was made because the commission believes, quote, that agencies should not be required to provide relief before the expiration of the complainant's 90 day right to file suit. So I think the government's concerns about this was somehow a rule allowing Mr. Farrar's suit to continue somehow opening the floodgates is unwarranted, given this regulation. And in the mine run of cases, we believe that the government has ample resources to protect itself by simply awaiting the expiration of the 90 day appeal period before it orders relief. I don't know if that didn't happen in this case, the EEOC actually ordered relief provided within 60 days. I'm not sure why that that is the case. I think the government could have certainly I see that I'm out of time. I complete the thought. Yeah. And I think the agency could have requested reconsideration on that point if they sought to extend the period to 120 days to align with the regulation here. But I do think that this shows that concerns over, you know, floodgates are unwarranted, given this regulation is already on the books. So we can we can ask the government about the way this works in operation, too. But to the extent that you're aware of it and have given thought to it, can what happens in a in which the award has been entered so that the we know how much is owed, but then there's no actual payment of the award within the 90 day period. And then but some but at some point there before the 100. Within 120 day period, sorry. And then but at some point before the 90 day period, the suit is brought. And then what how does that play out? I'm not sure in practice, the regulation certainly contemplates and the notes to the regulatory change certainly indicate that the change was made to protect agencies. So I would assume that in that scenario, the agency simply would not provide would not make the payment and the case would proceed in district court as we are here. Okay. Let me make sure my colleagues don't have any additional questions for you, Mr. Robinette at this point. We'll give you some rebuttal time. Thank you, Mr. Farrar. Morning, if it may please the court. I'm Andrew Farrar advocating on my own behalf. I just I wanted to touch on this, this issue that's been brought up as far as counterclaim. With with regard to Massengill, my fellow civil servant actually stated in their brief that it's not quite as simple as counterclaiming. And where I think that lies is that there is a jurisdictional issue with the Tucker Act. And if the rule if the rule were to require the parties to stipulate to a counterclaim being remanded to the Federal Court of Claims at the as the result of a trial, that would be entirely consistent with Massengill, the circuit's precedence, and also West v. Gibson, which was where the Supreme Court was tasked with determining whether the EEOC had any authority at all to issue compensatory damages. And when that case was decided by the Supreme Court, it did recognize the possibility for a case similar to mine arising. And, you know, it simply stuck to the language of the statute to say that, you know, in the event it does happen where somebody's think it's important to keep in mind that there are 2 million employees in the federal government and to issue a rule that under, you know, a doctrine of equitable mootness or something to that effect would risk consuming the entire statute. Thank you. May I ask one question? Absolutely. Chief Judge, I know the time. So, Mr. Farrar, is there anything that the amicus said that you disagree with other than, you know, aside from any anything you've already said, anything the amicus said that you disagree with? No, not that not that comes to mind. Well, with respect to maybe the counterclaim, which I guess I elaborated that on that point. And I think you had asked why the government wouldn't have the right to immediately counterclaim. I think it's because it is tied to the right of a trial where, you know, if the result of the trial is a lower award or no liability, then, of course, you know, I don't think anybody would have the right to continue to hold on to something that they had been adjudicated not to have a legal right to. I just think it's important to recognize that in judicial proceedings where you have to overcome maybe a motion to dismiss and summary judgment, someone hasn't actually lost their case until it goes to trial. Thanks so much, Mr. Farrar. Thank you. Thank you. Let me make sure my colleagues don't have additional questions for you, Mr. Farrar. Thank you. Ms. Palmer-Bell. Good morning, your honors, and may it please the court. My name is Catherine Palmer-Ball, and I represent the appellee in this matter, Steve Jerzyk, in his official capacity as the Administrator of NASA. One point I'd just like to make at the outset is to what the amicus stated as the government's position regarding the type of action Mr. Farrar seeks to bring here. I would not say that the government has conceded that Mr. Farrar's pleadings seek de novo review. I would say that we have assumed for the sake of argument that they do, and that even making that assumption, the acceptance and retention of the administrative remedy precludes him from proceeding in this suit at this time. Just to be clear, so the practical consequence of that is that I think you have conceded it for purposes of appeal. You're just holding out your ability to make that argument in remand. Is that where you're headed with that? I think we would not say we have conceded it. We would find that. I guess one of my questions is for our purposes as an appellate court, your brief comes to us without contesting that proposition. So I don't know if there's any practical distinction between a concession and an assumption as far as we're concerned. It seems to me that we're in the same place vis-a-vis the government that we assume for our purposes, which is tantamount to a concession, that you're not disputing that point. Now what you may or may not do with that on district court, that's not in our bailiwick, but for our purposes, is there any practical difference? No, we assume for purposes of this. Okay. I just wanted to make sure I wasn't missing where the government was. Okay. Yes. Thanks. And we believe that under this court's holding in Scott, that a federal employee in the situation such as Mr. Farrar, who has prevailed at the administrative level and was awarded a remedy has a choice. He can accept that disposition in the remedy, or alternatively, he can seek to bring a trial de novo in federal court. And having made that election, he should have to reject all aspects of the administrative proceeding, including the remedy in order to proceed. And part of the reason for that is that, as I think the court has hinted at in these cases that it, they can take some time and that those remedies become more difficult to unwind with the passage of time. And so to save the way to go about this for the end of a case through, or through a counterclaim, it really should be something that is decided at the beginning and at the end of the case. I don't see a basis for that in the statute. Can you, can you direct me to some language in any of the operative statutes that would require this procedure? The government's position is that the term civil action in the statute is, under Supreme Court precedent, is a trial, means a trial de novo. And that is what our argument rests upon in this court's holding in Scott that, that to seek a trial de novo under the circumstances should mean disgorgement of the, of the remedy. But Scott only said to seek a trial de novo means you have to seek a trial de novo, i.e. a trial on all of the issues. It doesn't say anything about disgorgement. Disgorgement, I mean, what authority is there that disgorgement is part of trial de novo and what trial de novo means? And doesn't our decision in pain undermine your, your argument? I think Scott did not face the precise issue presented here, but I think it, it very much follows from Scott and, and this, the, the court's language in Scott that, you know, a employee has a choice to either accept the disposition in its award or to proceed with a de novo action. Well, to the extent that there's a problem here, hasn't the EEOC resolved it with 29 CFR 1614.502? Your Honor, with respect to the, the change to 120 days that, that was referenced, perhaps it was not the, that is not what happened in this case. In this case, the commission order did require the agency to comply within 60 days. And the government could have asked for sought reconsideration of that, right? Right. And the government did not seek reconsideration of that order in this case. So, so I mean, the EEOC is obviously, we should presume they're aware of their own regulations. The regulation says ordinarily you have 120 days unless the agency orders otherwise, unless we order otherwise. For whatever reason, in their wisdom, the EEOC made the, the award payable in 60 days here. I mean, basically the, to the extent that, that NASA is in a conundrum, it's, it's in the conundrum because the EEOC decided for whatever reason that the award should be paid sooner than the 120 days. I mean, that's, that's, that's sounds like, you know, the rule contemplated that that could happen. And I don't see why we as a court should try to unwind that. I think the reason to do so is, you know, the court's holding in Scott and the nature of a, of the trial de novo, and that the concept that it would, it would not be fair for to, to litigate a new, the same determination while, while maintaining the benefits of the prior decision that you are seeking to, that you've stepped away from. One thing I don't quite follow about this is that it, it seems like the whole predicate of having this rule, the regulation adopted to give the government time, the idea is want to expand the window so that the government can know before it has to pay up, whether the, the complaining party is going to bring a suit. If the whole point of that was allowed to the government to make an intelligent decision about whether to pay, that seems to presume that there is no automatic entitlement, automatic requirement to disgorge by filing suit. Because if there were, then there would have no, there wouldn't have been any reason to have the extended time window. I think that, you know, as I say, it was not, it was not the situation that we're in, in this case, the, that NASA was faced with the choice, you know, and NASA was bound to comply with the EEOC and did so. And it did not have, you know, the opportunity that's the factual circumstances that this case has arisen in. Ms. Palmer Ball, I think that the government might have a common law equitable estoppel argument to block this suit based on Mr. Farrar's acceptance of the EEOC award. But you didn't argue common law equitable estoppel. My, my instinct is that that's probably a forfeited argument. Any, any, any reason why I should not treat that as a forfeited argument? Your Honor, I think we did, we did say, use language in our brief such that it was, would be fundamentally unfair to, to proceed in that manner. And to the extent, you know, that the court used that as encapsulating a kind of equitable estoppel argument. I think that, that argument was in our brief. I would note also that the, the regulation in subpart B does put forth different, I just thought it was an interesting comparison of, of the EEOC regulation, how they treat different aspects of relief. And the regulation does seem to, to take into account the same concern that NASA has put forth here about when, when it comes to a monetary remedy, you know, once, once the monetary remedy changes hands, it can be difficult to unwind that. And so it, it affords the agency, the ability to delay the payment in under these circumstances where reconsideration is permitted. And I think the same principles could, could be drawn here. But it seems significant then that the agency didn't avail itself of its, of its right to seek reconsideration. I mean, if anything, the equities are against the government here because you didn't seek to use all the remedies that you had before the agency, before the EEOC. The agency did not seek reconsideration. That's correct, Your Honor. But, And so, so that would seem to be that if you had an opportunity to seek relief from having the, to pay out the money and you didn't, and then you come here and you say to us, this is all unfair, but you sat on your rights below, that would seem to counsel against the force of any equitable argument you can make before us. I think the government's position is that Mr. Farrar reset everything when he, when he sought a civil action de novo. And I see that I'm out of time. I'm happy to answer any further questions, but if, if the panel doesn't have any, then we would request that. I have, I have one, I have one quick question, which is how does, how would this play out for non-monetary relief? So for example, if there were equitable relief in the nature of a reinstatement or something, it's, I don't know how you disgorge a reinstatement. And if the person's back on the job, but there's some overarching principle that says you have to disgorge, what does that mean for non-monetary equitable forms of relief that might be bound up in a, in the award that an agency that the EEOC makes? Yes, your honor. I think it does become a more difficult question when you consider different aspects of relief. The, the bright line rule that the government is advocating is that an individual would have to forswear all facets of, of the relief awarded. I think the, the EEOC regulation that the court drew the party's attention to last evening it, it comes up with a way of differentiating between reinstatement versus monetary relief in subsection B and it, it envisions a, a restoration to, to a position in a temporary or provisional capacity pending the outcome of the reconsideration. And so it treats those two, two elements of relief differently. Right. I think the, the agency can construct or an agency could construct a regulatory regime that takes account of these, but if there's some antecedent principle that's supposed to tell us that there's naturally an obligation to put yourself back to the position you were in before, it's just not entirely clear to me how that works out with non-monetary relief. I think under, under the rule that the government advocates, it would, it would have to be that you reject all aspects of the administrative remedy in order to challenge them. Yeah. You all under the rule you adopt, it's not that you rejected, you would have, you would have, in other words, you don't think there was a problem with the rich, with accepting it. It's that you think the problem is that having accepted it, you have to return it. Right. That's as I understand it, the government's position. It's not as if he was precluded from bringing suit the moment that he accepted, or is that, am I wrong? No, he's not precluded from bringing suit. It's precluded from proceeding with the action until disgorgement occurs. Until disgorgement. That's, that's what I, I thought your position was. And then, and then it becomes a question of how you do that when what you've accepted is not just monetary relief, but is other stuff too, as to which it's not as easy to contemplate how you return it. Yes. I think, you know, the questions get more difficult and I think it's within a district court's discretion as well, how to, you know, how to set that in process moving forward with the suit. Okay. So if an agent's, if the EEOC orders reinstatement, it's done that because it found discrimination and it found that, that the employer wrongfully terminated the employee. And you believe that if the employee is going to challenge any part of the award, damages or attorney's fees or any part of the award, and therefore under Scott has to seek a trial de novo, then, then what has to happen is that the agency that the EEOC found acted unlawfully basically they get the status quo ante of their unlawful action, according to the EEOC until the court decides in that the employee gets no benefit at all of the EEOC determination. Yes, your honor, pending the outcome of the district court action, it's the employees required to, to prove liability anew. And so our position is that they have to step away from the remedy received and the underlying decision that they're challenging. Thank you, Ms. Palmer. Well, let me make sure my colleagues don't have additional questions for you. Thank you. Ms. Robinette, we'll give you two minutes for rebuttal. Thank you. Just two quick points I wanted to make. It seems like a lot of what's animating the government's concern in this case, their background assumptions or intuitions about a plaintiff's ability to, to repay should he ultimately be unsuccessful in this court. No matter how well-founded those assumptions or intuitions may be, we would posit that the court fashioning a legal rule based on those assumptions in the absence of any statutory authority or precedent. The second point pertains to trial de novo. We don't disagree with anything the government says about civil action or de novo review or what the plaintiff must prove before the district court. Our argument is that nothing about allowing a plaintiff to retain his administrative award impacts this court's ability to, to review the case in de novo, you know, without deference to any previous findings and undertake a de novo review of that. Thank you. Make sure my colleagues don't have questions for you on rebuttal. Thank you, counsel. Thank you to all counsel. Ms. Robinette, you were appointed by the court to support appellants arguments in this matter and the court thanks you and your colleagues for your assistance.
judges: Srinivasan, Wilkins, Walker